Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5157 | **DATE** | 9/6/2001 |
| **CASE TITLE** | Michael Koch-Weser vs. Board of Education of Riverside Brookfield High School District 208, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motions for leave to file a response instanter to defendant's motion for summary judgment [45-1] and for leave to file a memorandum of law in excess of 15 pages [45-2] are denied. Defendants' motion for summary judgment [39-1] is granted in part and denied in part, as set forth in the accompanying Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | SEP 1 3 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 47 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

DOCKETED
SEP 1 3 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL KOCH-WESER, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 98 C 5157 |
| | ) | |
| BOARD OF EDUCATION OF RIVERSIDE | ) | |
| BROOKFIELD HIGH SCHOOL DISTRICT 208, | ) | Judge Joan B. Gottschall |
| et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### Background

Plaintiff Michael Koch-Weser is a high school teacher at Riverside Brookfield High School. He brought suit against the defendants under 42 U.S.C. § 1983 alleging that he was retaliated against for engaging in speech protected under the First Amendment. Count I of Koch-Weser's complaint alleges retaliation in violation of the First and Fourteenth Amendments against defendants Leslie Wilson and Charles Klingsporn. Count II alleges retaliation in violation of the First and Fourteenth Amendments against defendants Board of Education of Riverside Brookfield High School District 208 and Riverside Brookfield High School District 208. In Count III, Koch-Weser alleges that the defendants' conduct constituted intentional infliction of emotional distress under state law.

Pursuant to a briefing schedule set by the court on December 1, 2000, the defendants filed a motion for summary judgment, along with a Local Rule 56.1(a) statement of undisputed facts, on December 15, 2000. Attached to the motion was a certificate of service indicating that a copy of the motion had been served on plaintiff's counsel of record. The scheduling order directed plaintiff to respond to defendants' motion by January 31, 2001. As of February 21, 2001, no

response had been filed or served on defendants' counsel. On that date, defendants filed a document entitled "Reply in Support of Their Unopposed Motion for Summary Judgment," noting that plaintiff had not responded to their motion and requesting that the court grant summary judgment in their favor. Then, on June 22, 2001, plaintiff filed a motion for leave to file a response instanter, and for leave to file a memorandum of law in excess of fifteen pages.

Plaintiff's "explanation" for this delay of nearly five months consists of the following: 1) defendants' motion was complex, containing a 49 page Statement of Undisputed Material Facts, and responding to the motion was extremely time-consuming; 2) preparing plaintiff's proposed 32 page response brief was time-consuming; 3) plaintiff's counsel was busy representing several other parties in several unrelated cases, that were in various stages of litigation; 4) plaintiff's counsel ran for political office in April, 2001. Plaintiff's counsel asks this court to excuse his delay and argues that the "onerous schedule of counsel" should not keep this court from hearing plaintiff's claims on the merits.

None of plaintiff's counsel's explanations are sufficient to excuse his delay. Federal Rule of Civil Procedure 6(b) allows the court, in its discretion, to grant a party an extension of time after a deadline has passed where the party's failure to meet the deadline is due to "excusable neglect." Fed. R. Civ. P. 6(b). Counsel's busy litigation schedule and personal schedule do not amount to excusable neglect. If counsel had asked the defendants to agree to an extension, but then failed to notify the court of the agreement, such carelessness might be excusable. See *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 360 (7th Cir. 1997). But here, counsel was simply inattentive to the litigation, and his failure to meet the deadline appears to have been due to nothing more than "slumber." See *Plunkett v. Emerald Builders, Inc.*, 82 F.3d 738, 742 (7th Cir.

1996). The court might find counsel's failure to meet the deadline excusable if counsel had at least alerted the court of his intention to respond or the reasons for his delay before nearly five months had passed. This court must be able to enforce its briefing deadlines in order to manage its docket. Counsel's excuses for his delay are "so thin as to leave the lapse not only unexcused but inexplicable." *Prizevoits v. Indiana Bell Telephone Co.*, 76 F.3d 132, 133 (7th Cir. 1996). Thus, the court denies plaintiff's motion to file a response instanter. Plaintiff's motion to file an oversized memorandum of law is denied as moot.

## Analysis

Local Rule 56.1(b) requires a nonmoving party to submit a concise response to the moving party's statement of facts. Where the nonmoving party fails to do so, the material facts set forth in the moving party's statement are deemed admitted. *See* Local Rule 56.1(b)(3)(B); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Hudson v. West Harvey/Dixmoor School Dist. No. 147*, No. 99 C 0048, 2001 WL 363501, at *1 (N.D. Ill. Apr. 11, 2001). Hence, the material facts set forth in defendants' statement of facts are deemed admitted in this case.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

*First Amendment Retaliation*

In order to establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must demonstrate that "(1) his conduct was constitutionally protected and (2) his conduct was a 'substantial factor' or 'motivating factor' in the defendant's challenged actions." *Thomsen v. Romeis*, 198 F.3d 1022, 1027 (7th Cir. 2000) (citing, among others, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The plaintiff cannot prevail on the second prong unless he establishes that the defendant would not have taken the challenged actions "but for" the constitutionally protected speech. *See id.* If the plaintiff successfully establishes these two elements, then the burden of proof shifts to the defendant for the third and fourth inquiries. The third inquiry involves the *Pickering* balancing test. Under the *Pickering* test, the court weighs "the employee's First Amendment interest against the government's interest, as an employer, in efficiently providing government services through its employees." *Klunk v. County of St. Joseph*, 170 F.3d 772, 775 (7th Cir. 1999) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)). Finally, the defendant may avoid liability by showing by a preponderance of the evidence that it would have taken the challenged actions even in the absence of the protected conduct. *See id.*

In his complaint, Koch-Weser alleges that he engaged in several acts of protected speech,

4

including speaking on behalf of custodial and kitchen workers, posting the Niemoller quotation, and expressing his views on significant curriculum changes. Koch-Weser further alleges that the defendants took several acts in retaliation for his protected speech. These acts include: (1) sending a memorandum to Koch-Weser informing him that a course he taught, Honors Advanced Biology, was to be revamped or possibly eliminated because a new course, AP Biology, was going to be taught; (2) accusing Koch-Weser of abandoning his homeroom class when two other teachers were in the room; (3) temporarily withholding a room assignment that would place Koch-Weser in a room with adequate sunlight, despite having knowledge that Koch-Weser suffered from Seasonal Affective Disorder; (4) canceling the Honors Advanced Biology course; (5) failing to provide Koch-Weser with his yearly evaluation by May 15, 1997, in violation of the teachers' collective bargaining agreement, allegedly in order to find more negative information about Koch-Weser; (6) removing (twice) a famous quotation by Pastor Martin Niemoller that had been posted by Koch-Weser on his classroom door[1]; (7) denying Koch-Weser's request for a leave of absence to serve jury duty, and calling his wife to "interrogate" her about the circumstances of his jury duty.

The first inquiry is whether plaintiff's speech was constitutionally protected. In deciding the motion to dismiss in this case, Judge Williams considered whether the speech Koch-Weser allegedly engaged in was constitutionally protected, and concluded that it was. The evidence presented by defendant has not changed that conclusion. Even Koch-Weser's posting of the

---

[1] The quotation read: "In Germany they first came for the Communists and I didn't speak up because I wasn't a Communist. Then they came for the Jews, and I didn't speak up because I wasn't a Jew. They came for the Trade Unionists, and I didn't speak up because I wasn't a Trade Unionist. Then they came for the Catholics, and I didn't speak up because I was a Protestant. Then they came for me – and by that time no one was left to speak up."

5

Neimoller quotation could have been addressing a public concern, because he posted the quotation at a time when the school community was concerned about the administration's plans to cancel Koch-Weser's Honors Biology class. (Mem. Opinion and Order, 7/15/1999 at 10-11) (Williams, J.).

The second inquiry is whether the protected speech was a substantial or motivating factor in the defendants' challenged actions. Defendants argue that there is no evidence connecting their actions to Koch-Weser's protected speech. But, the undisputed proximity in time between plaintiff's speech and the actions taken by defendant would permit a jury to infer that his speech was at least a motivating factor in defendants' actions. (Mem. Opinion and Order, 7/15/1999) (Williams, J.) ("For example, within one month of Weser's opposition to the plan to terminate thirty members of his collective bargaining group, Wilson and Klingsporn began taking actions that seemingly singled out Weser for adverse treatment."). The relevant dates of the speech activities and the defendants' challenged actions are not in dispute. Further, the defendants essentially admit that speech was a motivating factor with respect to at least one action Koch-Weser complains of – the removal of the Niemoller quotation. In their Statement of Undisputed Facts, defendants state, that Koch-Weser was informed that the quotation was removed "at the direction of the Administration because it might be offensive to members of the Department." (Defs' Statemt. of Facts, ¶ 131). Thus, although the defendants offer other reasons for their actions, the suspicious timing, combined with other undisputed facts, such as the defendants' admission that at least some of the challenged acts were in response to the substance of the speech, precludes a finding on this record that the defendants' acts were not motivated by Koch-Weser's speech.

6

At this point, the burden shifts to defendants with respect to the third and fourth inquiries. The third inquiry involves balancing plaintiff's speech interests against defendants' interests in providing services efficiently. Defendants claim that "Plaintiff must show that his free speech interests outweigh the District's interest in promoting efficient and effective service." (Memo. in Supp. of Summ. J. at 10). Although they have the balancing test correct, defendants mistakenly place the burden on plaintiff. *Klunk*, 170 F.3d at 774. The factors to be considered include:

> (1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform his daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general public.

*Klunk*, 170 F.3d at 776. Defendants have offered several administrative reasons for their actions, but they have not shown that no reasonable jury could find that Koch-Weser's First Amendment rights outweigh these interests. With respect to Koch-Weser's speech against the plan to terminate certain employees, for instance, plaintiff's speech interests seem especially strong. His speech would not necessarily create any special difficulties in maintaining discipline at the school. Nor would it have impeded Koch-Weser's ability to perform his duties while working. Further, the issue was one on which lively debate would have aided the decision-making process. His speech was directed at a matter of concern not just to him, but to the entire school community. Hence, the administrative reasons underlying any of the actions taken by defendant in retaliation for that speech would have difficulty overcoming plaintiff's speech interests. Defendants have failed to carry their burden of establishing that the balancing test must

7

necessarily tip in their favor.

The fourth inquiry is whether the defendants would have taken the challenged actions even absent plaintiff's protected speech. The burden is on the defendant to establish that they would have taken such actions anyway. Here, defendants do not expressly argue that they would have taken any of their actions in the absence of plaintiff's speech. At least with respect to the removal of the Niemoller quotation, such a conclusion would be impossible to reach. Obviously, the defendants would not have removed the quotation had Koch-Weser not posted it. As to the defendants' other challenged actions, they have offered explanations for each act. Nonetheless, their burden is to show that no reasonable jury could conclude that they might not have taken such actions in the absence of Koch-Weser's speech. Given the proximity of Koch-Weser's speech to the defendants' other challenged actions, a reasonable jury could still conclude that the defendants would not have singled out Koch-Weser for such actions absent the speech.

Defendants advance a final argument in favor of summary judgment on the retaliation claim: that they are entitled to judgment as a matter of law because Koch-Weser did not suffer an adverse employment action. (Memo. in Supp. of Summ. J. at 11-12). Defendants' argument is misguided. In a § 1983 First Amendment retaliation claim, no adverse employment action (in the Title VII sense) is necessary. That is, plaintiff need not be discharged, demoted, or reassigned in order to state a claim. *Power v. Summers*, 226 F.3d 815, 820-21 (7th Cir. 2000). Rather, any deprivation under color of law that is "likely to deter the exercise of free speech" is actionable. *Id.* at 820. The only qualification is that "the circumstances [must be] such as to make such a refusal an effective deterrent to the exercise of a fragile liberty." *Id.* at 820. Here, defendants have not shown, or even argued, that their actions were so insignificant that they would not

8

effectively deter the exercise of free speech.

Despite plaintiff's failure to respond to the motion for summary judgment, defendants have failed to show that they are entitled to judgment as a matter of law on plaintiff's First Amendment retaliation claim.

## Qualified Immunity

Although the evidence in the record is sufficient to support Koch-Weser's claim of First Amendment retaliation, defendants argue that Count I, against Wilson and Klingsporn in their official capacities, should be dismissed because the individual defendants are entitled to qualified immunity. Government officials are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In cases where a balancing test is involved, such as the *Pickering* balancing test at issue here, it may be difficult for an official to make the determination. Thus, some cases have suggested that an official is entitled to qualified immunity unless there is a "very closely analogous" case. *See Rakovich v. Wade*, 850 F.2d 1180, 1213 (7th Cir. 1988). But the Seventh Circuit has made it clear that a plaintiff need not point to a case "on all fours" with his case, because such a rule would almost always lead to a finding of qualified immunity. *Coady v. Steil*, 187 F.3d 727, 734 (7th Cir. 1999). Rather, the relevant inquiry is "whether a reasonable state actor would have known that his actions, viewed in light of the law at the time, were unlawful." *Id.* at 734 (citation omitted). In this case, if the jury concludes, as it may, that Wilson and Klingsporn took all of the challenged actions listed above, singling out Koch-Weser for such treatment because of his speech activities, then Wilson and Klingsporn cannot avoid liability under the doctrine of

9

qualified immunity. A reasonable person would have known that such retaliation against an employee for expressing his opinions clearly violates that employee's First Amendment rights. The right to be free from retaliation for protected speech is clearly established. *See Gorman v. Robinson*, 977 F.2d 350, 354 (7th Cir. 1992). Thus, Wilson and Klingsporn have not shown that they are entitled to judgment as a matter of law on Count I.

*Custom or Policy*

Next, defendants argue that summary judgment should be granted as to Count II because there is no evidence that a Board policy or custom exists. A local governmental entity is liable only if: 1) there is an express policy that, when enforced, causes a constitutional deprivation, 2) there is a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or 3) a person with final policymaking authority caused the constitutional injury. *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994); Monell v. Dep't of Social Servs., 436 U.S. 658, 659 (1978). All that Koch-Weser alleges with respect to custom or policy is that he informed the Board and the District of the allegedly retaliatory actions, and that his grievances were denied. On the motion to dismiss Judge Williams found that one could reasonably infer from the allegations that the Board and District approved of the actions taken by Wilson and Klingsporn, and therefore adopted a policy of retaliating against the expression of unpopular speech. (Memo. Opinion and Order, 7/15/1999 at 16-19). At the summary judgment stage, however, the court does not simply test the adequacy of the allegations. A simple "'short and plain statement' of such official policy or custom" is no longer sufficient. (*Id.* at 18). Rather, the court looks to whether there is sufficient evidence of a custom or policy to allow a factfinder to conclude that the defendants maintained such a policy or

10

custom. After reviewing the record, the court concludes that there is no evidence in the record to show that the Board and District maintained a policy or custom of retaliating against unpopular speech. There is no indication that the Board or the District knowingly ratified acts of retaliation for protected speech activities. Thus, defendants' motion for summary judgment is granted as to Count II.

### *Intentional Infliction of Emotional Distress*

Plaintiff has also alleged an claim of intentional infliction of emotional distress. In order to succeed on this claim in Illinois, a plaintiff must show that:

> (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress.

*Strasburger v. Board of Education*, 143 F.3d 351, 358-59 (7th Cir. 1998). In support of his claim for intentional infliction of emotional distress, plaintiff points only to the defendants' delay in placing him in a room with windows, given their knowledge of his Seasonal Affective Disorder. Given that defendants' statement of facts are deemed admitted, the plaintiff has failed to demonstrate a genuine issue of material fact regarding whether defendants' conduct was extreme and outrageous. The admitted facts indicate that the delay was a result of Koch-Weser's failure to submit an instructional plan for his Honors Advanced Biology course, that Koch-Weser was aware of the reason for the delay and knew that if he submitted the instructional plan he could be placed in a classroom with windows, that Koch-Weser sought a room with windows only for two class periods, and did not complain about his windowless rooms for certain other class periods, that Koch-Weser was never told that his assignment to the windowless room for those two

11

periods was a permanent assignment, and that Koch-Weser was placed in a room with windows for those two periods after he turned in an acceptable instructional plan. Given these undisputed facts, no reasonable jury could conclude that defendants' actions were extreme and outrageous. Defendants are therefore entitled to summary judgment as to Count III.

*Punitive Damages*

Finally, defendants argue that punitive damages are inappropriate because there is no evidence in the record that Wilson or Klingsporn were "motivated by evil intent or callous indifference to the federally-protected rights of Plaintiff." *Stachniak v. Hayes*, 989 F.2d 914, 928 (7th Cir. 1993). As pointed out above, however, a reasonable jury could conclude from the suspicious timing and the other evidence in the record that Wilson and Klingsporn singled out Koch-Weser for negative and unusual treatment because of his protected speech activities. It follows that a reasonable jury could infer that this treatment the product of an evil motive or a callous indifference to Koch-Weser's First Amendment rights. This is necessarily a decision for the factfinder. Thus, defendants' motion for summary judgment is denied as to punitive damages.

## Conclusion

Defendants' motion for summary judgment is granted as to Counts II and III, but denied in all other respects.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 6, 2001